UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CASE No.

KYLE L. PASCHAL-BARROS
- PLAINTIFF -

v.

SCANNED at GCI
and Emailed
5/21 by CO 65 pages      65
date    initials   No.

ANGEL QUIROS
ROGER BOWLES

CRAIG WASHINGTON

SCOTT MUELLER                    MAY 19, 2021
- DEFENDANTS -

42 U.S.C §1983 CIVIL RIGHTS COMPLAINT

A. JURISDICTION

1. SUBJECT-MATTER JURISDICTION IS PROPER IN THIS COURT PURSUANT

TO 28 U.S.C §§ 1331 AND 1343 (a)(3) AND 42 U.S.C §1983 BECAUSE

THIS ACTION ARISES UNDER THE UNITED STATES CONSTITUTION AGAINST

STATE EMPLOYEES ACTING UNDER COLOR OF STATE LAW.

B. VENUE

2. VENUE IS PROPER IN THIS JUDICIAL DISTRICT PURSUANT TO 28 U.S.C

§1391(b) BECAUSE A SUBSTANTIAL PART OF THE EVENTS AND OMISSIONS

GIVING RISE TO THE PLAINTIFF'S CLAIMS OCCURRED IN THIS

DISTRICT

C. PARTIES

3. PLAINTIFF

    FULL NAME: KYLE LAMAR PASCHAL-BARROS

    INMATE No.: 390416

    FACILITY LOCATED: GARNER CORR. INST


    DEFENDANTS

4. FIRST DEFENDANT

    FULL NAME: ANGEL QUIROS

    RANK OR TITLE: COMMISSIONER OF CORRECTION

    WORK PLACE: CONN. DEPT. OF CORR.

    CAPACITY SUED: INDIVIDUAL AND OFFICIAL AS APPLICABLE BY LAW


5. SECOND DEFENDANT

    FULL NAME: ROGER BOWLES

    RANK OR TITLE: WARDEN/UNIT ADMINISTRATOR

    WORK PLACE: CONN. DEPT. OF CORR.

    CAPACITY SUED: INDIVIDUAL & OFFICIAL AS APPLICABLE BY LAW


6. THIRD DEFENDANT

    FULL NAME: CRAIG WASHINGTON

    RANK OR TITLE: DEPUTY WARDEN

    WORK PLACE: CONN. DEPT. OF CORR.

    CAPACITY SUED: INDIVIDUAL & OFFICIAL AS APPLICABLE BY LAW

7. FOURTH DEFENDANT

FULL NAME: SCOTT MULLDER

RANK OR TITLE: PSYCHOLOGIST

WORKPLACE: CONN DEPT. OF CORR

CAPACITY SUED: INDIVIDUAL & OFFICAL AS APPLICABLE BY LAW

D. FACTS

8. SINCE JULY 10 2012, THE PLAINTIFF ENTERED THE CUSTODY OF THE CONNECTICUT DEPARTMENT OF CORRECTION ("CTDOC")

9. SINCE IN CTDOC ON SEVERAL OCCASIONS THE PLAINTIFF HAS BEEN DIAGNOSED WITH MULTIPLE PSYCHIATRIC DISABILITIES. SEE PASCHAL-BARROS V. SEMPLE 3:18-CV-02157 (VLB) DOCUMENT (92); SEE DECLARATION BY CRAIG BURNS id ; SEE DECLARATION BY APRN REISCHERL id; SEE DECLARATION BY PAUL CHAPLIN id; SEE DECLARATION BY MARK FRAYNE id ; SEE DECLARATION BY GERARD GAGNE id. SEE PROBATE COURT PETITION BY DEFENDANTS QUIROS AND WASHINGTON (ATTACHED FILED UNDER SEAL) PAGE TWO; SEE PHYSICIAN'S CERTIFICATE BY EXPERT WITNESS DOCTOR SHAPTER (ATTACHED FILED UNDER SEAL) PAGES ONE THROUGH THREE ; SEE PHYSICIAN'S CERTIFICATE BY WITNESS DOCTOR MONTMINTY (ATTACHED FILED UNDER SEAL) PAGES ONE THROUGH THREE.

10. DEFENDANT ANGEL QUIROS IS ACTING COMMISSIONER OF CTDOC ALL TIMES HEREIN; AND IS THE LEGAL CUSTODIAN OF ALL PRISONERS CONFINED IN CTDOC FACILITIES, IS RESPONSIBLE FOR THE SAFE, SECURE, AND HUMANE HOUSING OF THOSE PRISONERS, AND HAS AUTHORITY OVER THE ASSIGNMENT OF PRISONERS TO CTDOC'S ISOLATIVE STATUSES

11. DEFENDANT ROGER BOWLES IS, AT ALL TIMES HEREIN, THE WARDEN OF NORTHERN CORRECTIONAL INSTITUTION ("NCI"), AS WARDEN, IS THE LEGAL CUSTODIAN OF ALL PRISONERS CONFINED AT NCI, AND IS RESPONSIBLE FOR THE SAFE, SECURE, AND HUMANE HOUSING OF THOSE PRISONERS

12. DEFENDANT CRAIG WASHINGTON IS, AT ALL TIMES HEREIN, THE DEPUTY WARDEN OF NORTHERN; AS DEPUTY WARDEN IS RESPONSIBLE FOR OVERSEEING OPERATIONS AND TREATMENT OF NCI AND ALL PRISONERS CONFINED AT NCI.

13. DEFENDANT SCOTT MULLIER IS, AT ALL TIMES HEREIN, THE SUPERVISOR PSYCHOLOGIST OF NCI, AS SUPERVISOR PSYCHOLOGIST IS RESPONSIBLE FOR THE MANAGEMENT AND ADMINISTRATION OF MENTAL HEALTH SERVICES THAT ARE CLINICALLY APPROPRIATE, CULTURALLY COMPETENT, AND WITHIN CONTEMPORARY STANDARDS OF DECENCY

15. SINCE JUNE 2016 TILL APRIL 12, 2021 THE PLAINTIFF HAD BEEN CONTINUALLY HOUSED IN NEAR-TOTAL ISOLATION AND SOLITARY CONFINEMENT DUE TO ALLEGED CONDUCT THAT IS A PRODUCT OF HIS MULTIPLE CO-OCCURRING DISABILITIES. SEE PASCUAL-BARROS V. SEMPLE, SUPRA DECLARATION OF CAPTAIN ROBLES, DECLARATION BY CAPTAIN HURDLE; SEE AFFIDAVID OF T. FORD (ATTACHED)

16. IN JANUARY 2020, SEPTEMBER 2020 DEFENDANTS BOWLES AND MULLER RECOGNIZED, ACKNOWLEDGED AND ADMITTED THAT THE PLAINTIFF HAS MORE THAN ONCE EMOTIONALLY AND MENTALLY DECOMPENSATE AND SUFFERS THE PSYCHIATRIC HARMS OF SOLITARY CONFINEMENT. THIS WAS AGAIN REPEATED IN OCTOBER 2020 WITH DEFENDANT WASHINGTON.

17. UPON INFORMATION AND BELIEF, THAT DEFENDANTS QUIROS AND BOWLES RECEIVED A LETTER FROM DISABILITY RIGHTS CONNECTICUT (THE STATES DESIGNATED PROTECTION AND ADVOCACY ENTITY PURSUANT TO 42 U.S.C § 10801 et seq] SEEKING DISCONTINUED USE OF PROLONGED ISOLATION OF MENTALLY ILL PRISONERS. SEE DISABILITY RIGHTS CONNECTICUT INC V. CONN. DEPT. OF CORR. et al 3:21-Cv-00146 (KAD) DOCUMENT [24] AMENDED COMPLAINT.

18. THE LETTER WAS IGNORED. AND NOT UNTIL MARCH 25 2021 DID BOTH QUIROS AND WASHINGTON PURSUE A PETITION IN PROBATE COURT

19. ON APRIL 2, 2021 THE PLAINTIFF WAS EVALUATED BY PSYCHIATRIST CHRISTINE SHAPTER WHO FOUND THE PLAINTIFF GRAVELY DISABLED DUE TO MANY YEARS IN SOLITARY CONFINEMENT AND CLINICALLY INSANE. SEVERAL TIMES THE EXPERT ASSERTS THE PLAINTIFF'S CONDITION IS A PRODUCT OF PROLONGED SOLITARY CONFINEMENT

20. THE PLAINTIFF WAS PERMITTED VOLUNTARY ADMISSION TO THE STATE'S MAXIMUM SECURITY PSYCHIATRIC HOSPITAL WHITING FORENSIC HOSPITAL ("WFH")

21. AMONG OTHER THINGS THE PLAINTIFF WAS ADMITTED FOR INDIVIDUAL AND GROUP THERAPY. HOWEVER UPON ARRIVAL THE PLAINTIFF WAS SENT TO THE COMPETENCY AND ASSESMENT UNIT AND WHEN SOUGHT THERAPY REGARDING HIS DISABILITIES HE WAS INFORMED BY WFH THAT DEFENDANTS QUIROS, MULLUER, AND WASHINGTON ONLY SENT HIM EVALUATION. UPON PRESENTING COPIES OF THE PROBATE DOCUMENTS WFH STAFF INFORMED THE PLAINTIFF THEY DID NOT RECEIVE THOSE NOR WAS RELIED THE PLAINTIFF NEEDED TREATMENT SO ONLY THE EVALUATION WOULD BE CONDUCTED

22. ON MAY 17, 2021 UPON CONCLUDING THE EVALUATION WFH STAFF IMMEDIATELY SENT THE PLAINTIFF BACK TO CTDOC GARNER CI AND INFORMED HIM THAT UNLESS QUIROS REQUESTS TREATMENT THEY ARE LIMITED TO HIS REQUEST

23. UPON ARRIVAL TO GARNER CI THE PLAINTIFF WAS SENT TO THE IN PATIENT MEDICAL UNIT. SHORTLY AFTER DEPUTY WARDEN SNYDER INFORMED THE PLAINTIFF DUE TO HIS STAFF PROFILES WITH DEPUTY WARDEN THOMAS KENNY AND OTHER WITNESSES FROM HIS CRIMINAL TRIAL; HIS MENTAL HEALTH

WILL BE LOWERED AND HE'LL RETURN TO SOLITARY CONFINEMENT

24. BOTH PROBATE WITNESS EXPLICITLY STATED THE PLAINTIFF NEEDS IN-PATIENT HOSPITAL TREATMENT AND NO LESSER RESTRICTED PLACEMENT IS APPROPRIATE

25. DESPITE ADMITTING THE PLAINTIFF'S NEEDS CAN NOT BE MET WITHIN CTDOC QUIROS HAS IMPEDED THE PLAINTIFF'S ACCESS TO MENTAL HEALTH TREATMENT

26. THE DEFENDANTS HAVE BEEN AWARE OF THE SERIOUS RISK OF HARM TO HIS MEDICAL NEEDS AND FAILED TO PREVENT THEM IN A COMPETENT MANNER

27. THE DEFENDANTS CONDONED, PARTICIPATED IN, AND SUPPORTED SEGREGATING AND ISOLATING THE PLAINTIFF BECAUSE OF HIS DISABILITIES

28. THE DEFENDANTS CONDONED, PARTICIPATED IN AND SUPPORTED THE PSYCHOLOGICAL TORTURE OF THE PLAINTIFF

C. CAUSES OF ACTION

FIRST LEGAL CLAIM
(42 U.S.C. §1983 : EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT;
PROLONGED ISOLATION OF AN INDIVIDUAL WITH SERIOUS MENTAL ILLNESS)

29. THE PLAINTIFF REPEATS AND REASSERTS THE FACTS SET FORTH IN PARAGRAPHS 1 THROUGH 28 ABOVE AS IF FULLY SET FORTH HEREIN.

30. THE DEFENDANTS, AND THEIR AGENTS, OFFICIALS, EMPLOYEES AND OTHERS ACTING IN CONCERT WITH THEM UNDER COLOR OF STATE LAW, BY AND PURSUANT TO CTDOC'S POLICY, CUSTOM, AND PRACTICES, HAVE VIOLATED THE RIGHTS OF THE PLAINTIFF BY DEPRIVING HIM OF HIS RIGHT TO BE FROM CRUEL AND UNUSUAL PUNISHMENT

31. THE DEFENDANTS HAVE PARTICIPATED IN SUBJECTING THE PLAINTIFF TO DANGEROUS AND DEGRADING MISTREATMENT, CAUSED HIM SERIOUS PAIN AND INJURY, PLACED HIM AT SUBSTANTIAL RISK OF PHYSICAL AND PSYCHOLOGICAL INJURY, ACTED CONTRARY TO STANDARDS OF DECENCY AND DENIED HIM THE MINIMAL CIVILIZED MEASURES OF LIFES NECESSITIES

32. THE DEFENDANTS SUBJECTED THE PLAINTIFF TO PROLONGED ISOLATION

(1) HAVE UNNECESSARILY AND WANTONLY INFLICTED PAIN UPON HIM; (2) HAVE ACTED AND CONTINUE TO ACT WITH DELIBERATE INDIFFERENCE TO THE PLAINTIFFS MEDICAL AND MENTAL HEALTH, SAFETY, GENERAL WELL-BEING AND SERIOUS MEDICAL NEED; AND (3) KNEW AND CONTINUE TO KNOW THE RISK TO HIS HEALTH, SAFETY, GENERAL WELL-BEING AND SERIOUS MEDICAL NEED BUT HAVE DISREGARDED THAT RISK AND FAILED TO TAKE COMPETENT REASONABLE MEASURES TO ABATE THAT RISK.

SECOND LEGAL CLAIM

VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C §12132; FAILURE TO ALLOW THE PLAINTIFF THE BENEFITS OF MENTAL HEALTH SERVICES, PROGRAMS, ACTIVITIES)

33. PLAINTIFF REPEATS AND REASSERTS THE FACTS OF PARAGRAPHS (1) THROUGH (32) ABOVE AS IF FULLY SET FORTH HEREIN.

34. THE DEFENDANTS AND THEIR AGENTS, EMPLOYEES, OFFICIALS AND OTHERS WORKING IN CONCERT WITH THEM UNDER COLOR OF STATE LAW, BY AND PURSUANT TO CTDOC POLICIES, PRACTICES, AND CUSTOMS OF PROLONGED SUBJECTION TO NEAR-TOTAL ISOLATION AND SOLITARY CONFINEMENT DUE TO HIS DISABILITIES; DENY HIM OPPORTUNITY TO BENEFIT FROM THE CTDOC MENTAL HEALTH SERVICES, PROGRAMS, AND ACTIVITIES.

35. THE PLAINTIFF RAISES THIS CLAIM AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES

36. THE PLAINTIFF IS A QUALIFIED INDIVIDUAL WITH DISABILITIES

37. DUE TO THE PSYCHIATRIC SYMPTOMS OF HIS DISABILITIES THE PLAINTIFF HAS REPEATEDLY AND CONTINUOUSLY BEEN SUBJECTED TO SOLITARY CONFINEMENT, WHICH THE DEFENDANT PARTICIPATE AND AID WITH.

38. THE PROLONGED ISOLATION OF PERSONS WITH MENTAL ILLNESSES CAUSE LONG-TERM PSYCHOLOGICAL HARM. THE PSYCHOLOGICAL EFFECTS OF PROLONGED ISOLATION ARE WELL-DOCUMENTED, SEVERE, AND "ANALOGOUS TO THE ACUTE REACTIONS SUFFERED BY TORTURE AND TRAMA VICTIMS." CRAIG HANEY, RESTRICTING THE USE OF SOLITARY CONFINEMENT, 2018 ANN. REV. CRIMINOLOGY 285, 295 (2018) INDIVIDUALS SUBJECTED TO PROLONGED ISOLATION ARE AT SUBSTANTIAL RISK OF EXPERIENCING "HEIGHTENED LEVELS OF ANXIETY AND PANIC", "IRRITABILITY, AGGRESSION, AND RAGE," "PARANOIA... AND VIOLENT FANTASIES," "COGNITIVE DYSFUNCTION, HYPERSENSITIVITY TO STIMULI, AND HALLUCINATIONS," "LOSS OF EMOTIONAL CONTROL," AND "INCREASED SUICIDALITY AND INSTANCES OF SELF HARM." id AT 291; SEE ALSO JESENIA PIZARRO & VANJA M. K STENIUS, SUPERMAX PRISONS: THEIR RISK, CURRENT PRACTICES, AND EFFECTS ON INMATES, 84 PRISON J. 248, 256 (2004) (NOTING "DECLINES IN MENTAL FUNCTIONING" AND "PROBLEMS WITH IMPULSE CONTROL" IN INCARCERATED PEOPLE SUBJECTED TO PROLONGED ISOLATION.). ONE LEADING SURVEY OF THE LITERATURE ON THE PSYCHOLOGICAL EFFECTS OF PROLONGED ISOLATION CONCLUDE THAT PRISONERS SUBJECTED TO PROLONGED ISOLATION MAY DEVELOP "A CONFUSIONAL PSYCHOSIS WITH INTENSE AGITATION, FEARFULNESS," AND THAT "THE HARM CAUSED BY SUCH CONFINEMENT MAY RESULT IN PROLONGED

OR PERMANENT PSYCHIATRIC DISABILITY." STUART GRASSIAN, PSYCHIATRIC EFFECTS OF SOLITARY CONFINEMENT.

39. MANY COURTS, INCLUDING THIS COURT RECOGNIZE THE PSYCHOLOGICAL HARM INFLICTED BY PROLONGED ISOLATION. SEE REYNOLDS V. ARNONE 402 F.SUPP.3d, 3, 12 (D.CONN. 2019); SEE ALSO DAVIS V. AYALA 576 U.S. 257, 289 (2015); RUIZ V. TEXAS 137 S.Ct. 1246,1247 (2017); GLOSSIP V. GROSS, 576 U.S 863, 926 (2015)

40. SO SEVERE OF DENIAL OF THESE BENEFITS IS HIGHLIGHTED BY THE FACT UPON ENTERING THE CTDOC THE PLAINTIFF WAS AN EMANCIPATED MINOR A RARE PRIVILEGE GRANT TO YOUTHS WHO COULD CARE FOR THEMSELVES; HOWEVER ON APRIL 2, 2021 (IN RESULT OF QUIROS PETITION WHICH ALSO EVIDENCE DENIAL TO THESE BENEFITS) DOCTOR SHAPTER FOUND THE PLAINTIFF GRAVELY DISABLED UNABLE TO CARE FOR HIMSELF BECAUSE OF INCARCERATION SINCE A TEENAGER AND MANY YEARS IN SOLITARY CONFINEMENT

## THIRD LEGAL CLAIM

(VIOLATION TO TITLE II OF THE ADA; 42 U.S.C §12132; DISCRIMINATION BY FAILURE TO PROVIDE PROGRAMS, SERVICE, AND ACTIVITIES IN THE MOST INTERGRATED SETTING APPROPRIATE FOR PLAINTIFF'S NEEDS)

41. PLAINTIFF REPEATS AND REASSERTS THE FACTS IN PARAGRAPHS (2) THROUGH (40) ABOVE AS IF SET FORTH HEREIN

42. PLAINTIFF BRINGS THIS CLAIM AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES

43. THE DEFENDANTS AND THEIR OFFICIALS, EMPLOYEES, AGENTS AND OTHERS ACTING IN CONCERT WITH THEM UNDER COLOR OF STATE LAW, BY AND PURSUANT TO CTDOC POLICIES, CUSTOMS, AND PRACTICES VIOLATE TITLE II OF THE ADA BY OTHERWISE DISCRIMINATING AGAINST THE PLAINTIFF BY FAILURE TO PROVIDE SERVICES, PROGRAMS, AND ACTIVITIES IN THE MOST INTERGRATED SETTING APPROPRIATE FOR THE PLAINTIFFS NEEDS PURSUANT TO 28 CFR §§35.152

FOURTH LEGAL CLAIM

(VIOLATION OF TITLE II OF THE ADA ; 42 U.S.C §12132 DISCRIMINATION PURSUANT TO 42 U.S.C §12101 (a)(1)(2)(3)(D)(5))

44. PLAINTIFF REPEAT AND REASSERTS THE FACTS IN PARAGRAPHS (1) THROUGH (43) ABOVE AS IF SET FORTH HEREIN

45. PLAINTIFF BRINGS THIS CLAIM AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES

46. THE DEFENDANTS AND THEIR AGENTS, OFFICIALS, EMPLOYEES, AND OTHERS ACTING IN CONCERT WITH THEM UNDER COLOR OF STATE LAW BY AND PURSUANT TO CTDOC POLICIES, PRACTICES AND CUSTOMS HAVE (1) SEGREGATED THE PLAINTIFF (2) ISOLATED THE PLAINTIFF (3) USED OVERYPROTECTIVE PRACTICES ON THE PLAINTIFF;

AND (4) RELEGATED THE PLAINTIFF TO LESSER SERVICES, PROGRAMS, ACTIVITIES, BENEFITS AND OTHER OPPORTUNITIES DUE TO HIS DISABILITIES

### FIFTH LEGAL CLAIM

(VIOLATION TO $504 - WITH IMPLEMENTING REGULATIONS OF THE REHABILITATION ACT) (EIGHT COUNTS)

47. PLAINTIFF REASSERTS ALL FACTS IN PARAGRAPHS (1) THROUGH (46) ABOVE AS IF SET FORTH HEREIN

48. PLAINTIFF BRINGS THIS CLAIM AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES

49. ACCORDING TO THE STATE OF CONNECTICUT AUDITORS OF PUBLIC ACCOUNTS CTDOC'S FEDERAL AND OTHER RESTRICTED ACCOUNTS RECEIPT MORE THAN ONE DOLLAR CONSISTING PRIMARILY OF FEDERAL AID AND GRANT TRANSFERS.

50. THE DEFENDANT'S DISCRIMINATORY PRACTICES IN PARAGRAPHS (29) THROUGH (46) HEREIN VIOLATE THE REHABILITATION ACT $504

F-    RELIEFS REQUESTED

WHEREFORE, IN THE INTEREST OF JUSTICE AS A MATTER OF LAW THE PLAINTIFF RESPECTFULLY SEEK THE COURT TO GRANT, IN THE DEFENDANTS APPROPRIATE CAPCITIES APPLISABLE BY LAW; :

(a) INJUNCTION PERMANENTLY ENJOIN DEFENDANTS, THEIR SUBORDINATES, AGENTS, EMPLOYEES, SUCCESSORS, AND ALL OTHER PERSONS ACTING IN COLOR OF STATE LAW FROM SUBJECTING THE PLAINTIFF TO PROLONGED ISOLATION EITHER BY MAINTAINING ANY OF THE PLAINTIFF'S IN ISOLATIVE STATUSES OR TRANSFERING HIM TO ANY ISOLATIVE STATUSES

(b) INJUNCTION AGAINST DEFENDANT QUIROS IN HIS OFFICIAL CAPACITY, PURSUANT TO 42 U.S.C §12188(a)(1) et seq. TO, EFFECTIVE IMMEDIATELY, TRANSFER LEGAL CUSTODY OF THE PLAINTIFF TO THE STATE OF CONNECTICUT COMMISSIONER OF MENTAL HEALTH AND ADDSTICTION SERVICES AS A VOLUNTARY PATIENT, ADMITTED TO WHITING FORENSIC HOSPITAL AND/OR ANY OTHER FACILITY UNDER THE COMMISSIONER OF MENTAL HEALTH'S JURISDICTION SAID COMMISSIONER DEEMS APPROPRIATE FOR THE PLAINTIFF'S NEEDS, FOR THE REMAINDER OF THE PLAINTIFFS CONVICTIONS, TO RECEIVE INTENSIVE IN PATIENT MENTAL HEALTH TREATMENT, PROGRAMS, ACTIVITIES, AND SERVICES IN A CLINICALLY APPROPRIATE, CULTURALLY COMPETENT, MOST INTERGRATED SETTING, APPROPRIATE FOR THE PLAINTIFF'S NEEDS

(c) MONETARY DAMAGES FROM EACH DEFENDANT JOINTLY AND SEVERALLY IN THEIR INDIVIDUAL CAPACITY, IN THE AMOUNT OF FOUR HUNDRED THOUSAND DOLLARS; IN REDRESS TO THE FIRST LEGAL CLAIM

(d) PUNITIVE MONETARY DAMAGES FROM EACH DEFENDANT JOINTLY AND SEVERALLY, IN THEIR INDIVIDUAL CAPACITY, IN THE AMOUNT OF TWO HUNDRED THOUSAND DOLLARS; FOR THEIR RECKLESS AND CALLOUS INDIFFERENCE TO THE PLAINTIFF'S RIGHTS IN THE FIRST LEGAL CLAIM

(e) MONETARY DAMAGES FROM EACH DEFENDANT JOINTLY AND SEVERALLY IN THEIR OFFICIAL CAPACITY, IN THE AMOUNT OF FOUR HUNDRED AND FIFTY THOUSAND DOLLARS; IN REDRESS OF LEGAL CLAIMS SECOND, THIRD, AND FOURTH

(f) PUNITIVE MONETARY DAMAGES FROM THE DEFENDANTS JOINTLY AND SEVERALLY, IN THE OFFICIAL CAPACITY IN THE AMOUNT OF THREE HUNDRED THOUSAND DOLLAR FOR THEIR RECKLESS AND CALLOUS INDIFFERENCE TO THE PLAINTIFF'S RIGHTS IN THE SECOND, THIRD AND FOURTH LEGAL CLAIMS

(g) COMPENSATORY AND PUNITIVE MONETARY DAMAGES AGAINST THE DEFENDANTS JOINTLY AND SEVERALLY IN THEIR OFFICIAL CAPACITIES IN THE AMOUNT OF THREE HUNDRED THOUSAND DOLLARS IN REDRESS OF THE VIOLATION TO AS WELL AS RECKLESS AND CALLOUS INDIFFERENCE TO THE PLAINTIFF'S RIGHTS IN THE FIFTH LEGAL CLAIM.

(h) PLAINTIFF SEEKS RECOVERY OF COSTS TO PURSUE THIS MATTER INCLUDING BUT NOT LIMITED TO ATTORNEY FEES, IFP DEBTS, DISCOVERY TAXES, TRIAL TAXES, POSTAGE AND MATERIAL

(i) ANY OTHER RELIEF(S) THE COURTS DEEM FAIR, EQUITABLE, AND JUST

G. EXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES

PLAINTIFF HAS EXHAUSTED THE AVAILABLE ADMINISTRATIVE REMEDIES

H. JURY TRIAL DEMAND

PLAINTIFF SEEKS JURY TRIAL ON ALL MATTERS TRIABLE BY JURY

I. VERIFICATION

UNDERSIGNED VERIFIES UNDER PENALTY OF PURJURY THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF

EXECUTED THIS 19TH DAY OF MAY 2021 AT NEWTOWN CONNECTICUT

RESPECTFULLY SUBMITTED

KYLE LAMAR PASCHAL-BARROS

#396416

GARNER CI

50 NUNNAWAUCK ROAD

NEWTOWN CT 06470

DOCKET NO.
TTD-CV-20-5013768-S

PASCHAL-BARROS                                    SUPERIOR COURT

          V.

CONN. DEPT. OF CORR.

       DECLARATION OF TRAY QUANFORD

UNDERSIGNED HEREBY DECLARES:

1. I AM OVER THE AGE OF EIGHTEEN AND UNDERSTAND THE MEANING
OF AN OATH

2. SINCE ON OR AROUND 06/16/2020 I HAVE BEEN AN INMATE
HOUSED AT NORTHERN CORRECTIONAL INSTITUTION ONE WEST HOUSING [NCI]
UNIT FOR ADMINISTRATIVE SEGREGATION STATUS [A/S]

3. I PROVIDE THIS DECLARATION TO TESTIFY AS TO THE
CONDITIONS OF CONFINEMENT AS KNOWN TO ME FROM DIRECT
EXPOSURE, I AM FAMILIAR WITH THE PHYSICAL LAYOUT OF
NORTHERN CI ONE WEST HOUSING UNIT AND BASE MY DECLARATION
ON THIS PERSONAL KNOWLEDGE

4. AS I UNDERSTAND THE AS PROGRAM IS A THREE PHASE
PROGRAM THAT AS PRISONERS MUST COMPLETE TO RETURN
TO GENERAL POPULATION. THE ENTIRE PROGRAM IS AT MINIMUM

                    [CONT'D ON PAGE TWO]

A TEN MONTH PROGRAM, PHASE ONE OF THE PROGRAM IS AT NCI ONE WEST HOUSING UNIT.

5. THE PROGRAM CONDITIONS ARE AS FOLLOWS:

• INMATES ARE HOUSED IN A CELL THAT CONTAINS A SINK AND TOILET -COMBINED- A METAL DESK WITH A METAL STOOL ATTACHED A CELL DOOR WITH A SMALL WINDOW A SMALL BACK WINDOW THAT FACES PRISON PERIMITER

• WHEN INMATES ARE REMOVED FROM THEIR CELL THEY ARE IN HANDCUFFS, LEG IRONS, AND A TETHER CHAIN

• SANCTIONS PERMITTED INMATES ARE ALLOWED ON 15 MINUTE TELEPHONE CALL PER WEEK AND ON 30 MINUTE NON-CONTACT VISIT PER WEEK LIMITED TO IMMEDIATE FAMILY ONLY [HOWEVER DURING THE COVID-19 PANDEMIC VISITS WHERE PROHIBITED]

• INMATES MAY BE ALLOWED ONE HOUR RECREATION PER DAY MONDAY THRU FRIDAY ONLY IF REQUESTED WHEN BREAKFAST IS PASSED OUT ITS NEVER OFFERED. AN IS IN A SMALL CEMENT ENCLOSING

• ALL MEALS ARE SERVED INSIDE THE CELL

• SHOWERS OCCUR THREE TIMES A WEEK ON AN EVERY OTHER DAY BASES

• IN ORDER TO ATTEMPT TO SOCIALIZE WITH EACH OTHER INMATES MUST SCREAM OUT A DOOR IN A VENT OR THROUGH THE SINK OFFERS ALLWAYS THREATEN TO WRITE DISCIPLINARY REPORTS FOR CAUSING A DISRUPTION

6. WHEN WE RECEIVE A DISCIPLINARY REPORT WE HAVE TO RESTART SIXTY DAYS IN PHASE ONE IF IN PHASE TWO OR THREE WE ARE BEING REGRESSED

7. PHASE ONE IS 120 DAYS PHASE TWO 90 DAYS PHASE THREE IS NINETY DAYS

8. PHASE TWO AND THREE ARE AT GARNER CI'S RESTRICTIVE HOUSING UNIT AT THIS TIME I LACK PERSONAL KNOWLEDGE OF CONDITIONS THERE - I'VE WITNESSED THAT SOME INMATES CANNOT GO TO GARNER DUE TO INSUFFICIENT CELL VACANCY AND DURING THE COVID 19 CRISIS HAVE HAD TO SERVE IT AT NCI ONE WEST

9. STAFF ARE NOT ALLOWED TO SOCIALIZE WITH US SEVERAL HAVE ATTEMPTED BUT LATER TELL ME THEY GOT IN TROUBLE FOR DOING SO, HOWEVER I'VE NOTICED MOST, BUT NOT ALL, STAFF VERBALLY PROVOKE AND INSTIGATE INMATES AND AT TIMES ENCOURAGED BY SUPERVISORS

10. AT THE REQUEST OF THE PLAINTIFF I HAVE FREELY WITHOUT THREAT PROMISE NOR BRIBE READ THE FOREGOING AND ACKNOWLEDGE AND AGREE THE STATEMENTS HEREIN ARE TRUE, ACCURATE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF

11. I Know who Prisoner Richard Reynolds is; I Know that MR. Reynolds is Classified As Special Circumstances

12. Special Circumstances And Administrative Segregation As well As Special needs Are All Housed in Northern CI One west

13. The Only Difference Physically Between Special Circumstances, and Phase One is Special Circumstances are allowed eletrical Outlets

4/5

I DECLARE UNDER PENALTY OF PERJURY, THAT THE
FOREGOING DECLARATION IS TRUE AND ACCURATE TO THE BEST
OF MY KNOWLEDGE AND BELIEF

DATE 09/02/2020

SIGNATURE X Trayquan Ford
      PRISONER NAME : TRAYQUAN FORD
      PRISONER NUMBER : 408563
            NORTHERN CI
            PO BOX 665
            287 BILTON ROAD
            SOMERS CT 06071

SIGNATURE OF NOTARY PUBLIC X _____
SEAL
MY COMMISSION ENDS : 6-30-2023

PAGE 5/5

| **Advocate Report** Connecticut Department of Correction | CN 9508/1 REV 2/01/16 |
|---|---|

| Inmate name: Paschal, Deja | Inmate number: 390410 |
|---|---|
| Disciplinary report: n/a | Report date: 1-9-17 |

| Advocate: E. Medina | Offense: n/a |
|---|---|

| Date and time form initiated: 1-10-17 | Time: 10:00 | ☒ am | ☐ pm |
|---|---|---|---|

**ACCUSED INMATE INTERVIEW**

I, Inmate Paschal #390410 am strongly suggesting to staff and administrators involved in the decision to designate me for Administrative Segregation to rethink this placement. Since November 2016 I've had several incidents (9 of which have resulted in DR's) occur that I attribute to my deteriorating mental health. This unfortunately culminated with me trying to take my own life on 1/9/17 at approximately 5:30pm. It's sad and I didn't plan the suicide but I believe ultimately it will be beneficial for me as I will receive the mental health treatment I didn't get which is why incidents like the one that occurred on December 5, 2016 have been an ongoing issue. Recently, President Barack Obama has ordered the Justice Department to review solitary confinement in federal prisons especially for mentally ill and vulnerable inmates. I believe Commissioner Semple would agree with his recent revisions in solitary confinement (known as administrative segregation) that placing me on this status would be a detriment for everyone involved in this case. I strongly believe that my placement on AS will result in me dead in a cell at Northern CI.

Note sent to Advocate via Email from Scott requesting witness statements

With my signature I acknowledge that I have met with my advocate.

| Inmate signature: *Deja L. Paschal* | Date: 1/10/17 |
|---|---|

000011

**Advocate Report**
Connecticut Department of Correction

CN 9508/2
REV 2/01/16

INMATE WITNESS(ES) STATEMENT(S)

| Inmate name: | Inmate number: |
|---|---|
| | |

| Inmate name: | Inmate number: |
|---|---|
| | |

STAFF WITNESS (ES) TESTIMONY

| Staff name: | Title: |
|---|---|
| | |

| Staff name: | Title: |
|---|---|
| | |

Evidence Reviewed ☐     Date:_____

ADVOCATE'S CONCLUSION

Inmate Paschal declined his initial request for witnesses. When he made this statement he was on mental health 5 status. I believe he should be off that status before further decisions are made

Advocate signature: [redacted]     Date: 1/10/17

000012

The Washington Post

**Transfer of Power**    Biden Cabinet    When states certify    Full election results    Opinions

Politics

# Obama bans solitary confinement for juveniles in federal prisons

By Juliet Eilperin
January 26, 2016

President Obama on Monday announced a ban on solitary confinement for juvenile offenders in the federal prison system, saying the practice is overused and has the potential for devastating psychological consequences.

In an op-ed that appears in Tuesday editions of The Washington Post, the president outlines a series of executive actions that also prohibit federal corrections officials from punishing prisoners who commit "low-level infractions" with solitary confinement.

The new rules also dictate that the longest a prisoner can be punished with solitary confinement for a first offense is 60 days, rather than the current maximum of 365 days.

The president's reforms apply broadly to the roughly 10,000 federal inmates serving time in solitary confinement, though there are only a handful of juvenile offenders placed in restrictive housing each year. Between September 2014 and September 2015, federal authorities were notified of just 13 juveniles who were put in solitary in its prisons, officials said. However, federal officials sent adults inmates to solitary for nonviolent offenses 3,800 times in the fiscal year that ended Sept. 30, 2014, suggesting that policy change will have more sweeping ramifications.

The reforms come six months after Obama, as part of a broader criminal-justice reform push, ordered the Justice Department to study how solitary confinement was being used by the Federal Bureau of Prisons.

The move is another example of the extent to which the nation's first African American president now seems willing to tackle delicate questions of race and criminal justice as he closes out his presidency. Obama has also been focused on trying to put in place programs to help ex-offenders reintegrate into society once they have left prison.

"How can we subject prisoners to unnecessary solitary confinement, knowing its effects, and then expect them to return to our communities as whole people?" Obama wrote in his op-ed. "It doesn't make us safer. It's an affront to our common humanity."

**wp NEWSLETTER** | WEEKDAYS

A 5-minute breakdown to track the presidential transition   **Sign Up →**

At least a dozen states have taken steps in the past two years to curtail the use of solitary confinement, either in response to lawsuits or through legislative and administrative changes. An increasing number of studies show a connection between isolating prisoners and higher rates of recidivism.

In recent weeks, Illinois and Oregon, in response to lawsuits, have announced they will exclude seriously mentally ill inmates from solitary confinement, and last month New York state reached a five-year, $62 million settlement with the New York Civil Liberties Union in which it pledged to significantly cut the number of prisoners in solitary as well as the maximum time they could stay there. California reached a settlement in September, pledging to overhaul the way it treats almost 3,000 inmates who are frequently kept alone for more than 22 hours a day in their cells.

Amy Fettig, senior staff counsel at the American Civil Liberties Union and director of the group's Stop Solitary Campaign, said that the Bureau of Prisons "has lagged behind a number of the states in reforming solitary confinement and in restricting its use and abuse."

"It's absolutely huge," Fettig said of the president's decision to change the way the federal system isolates inmates. "We rarely have presidents take notice of prison conditions."

While Obama is leaving the details of policy implementation to agency officials, the Justice Department's report includes "50 guiding principles" that all federal correctional facilities must now follow. They include increasing the amount of time inmates placed in solitary can spend outside their cells, housing prisoners in the "least restrictive setting necessary" to ensure their safety and that of others, putting inmates who need to be in protective custody in less-restrictive settings and developing policies to discourage putting inmates in solitary during the last 180 days of their terms.

A congressionally mandated audit of restrictive housing in federal prisons, published last year by the Center for Naval Analyses' Institute for Public Research, found that roughly 60 percent of the inmates whose solitary cases were reviewed had serious underdiagnosed or untreated mental illnesses. That study also found that many individuals put in protective custody for their own safety, including lesbian, gay, bisexual and transgender prisoners and those who are disabled, were regularly placed in solitary confinement.

Some of the states that championed reforms early, including Washington, have found that prisoners placed in restrictive housing — especially just before their release — are more likely to be repeat offenders. One study found that Washington state prisoners who were confined in solitary had a 20 to 25 percent higher recidivism rate than those in less-restrictive housing, and that those who spent time in solitary directly before reentering society were more likely to commit violent crimes.

Early Tuesday morning, Senate Judiciary Committee Charles E Grassley (R-Iowa) said in a statement that while he'll "be studying it over the next few days," it appeared to be justified.

"At first glance I was happy to see an effort to end solitary confinement of juveniles," Grassley said. "The good news is that the Judiciary Committee has already taken steps to minimize the solitary confinement of juveniles in both the Sentencing and Prison Reform bill and the Juvenile Justice and Delinquency Prevention Act reauthorization that I authored."

Kevin Ring, vice president of Families Against Mandatory Minimums, served 15 months in federal prison on fraud charges in connection with a a scandal surrounding former Republican lobbyist Jack Abramoff. He spent two days in solitary in October because of a scabies outbreak in a Cumberland, Md., facility. Although the isolation was not designed to punish the inmates, Ring said guards took away all his possessions — including paper and pen — and put him in a small cell with just a metal bed, shower and small window. The lack of human contact was the most disorienting part, he said, since guards pushed a tray of food through a slot at assigned meal times and he could "only hear voices down the hall."

"I don't know how people do it. I'm not solitary material," Ring said, adding that it should be used only "as a last resort."

As many as 100,000 state and federal prisoners are held in solitary confinement in the United States at any given time, according to the White House.

The president begin his op-ed by recounting the story of 16-year-old Bronx resident Kalief Browder, who was sent to Rikers Island in 2010 to await trial after being accused of stealing a backpack. He "spent nearly two years in solitary confinement," Obama wrote. Browder was released in 2013 without ever having stood trial or being convicted. He committed suicide at 22.

"Today, it's increasingly overused on people like Kalief, with heartbreaking results — which is why my administration is taking steps to address this problem," Obama wrote. "In America, we believe in redemption."

## 💬 742 Comments

**Juliet Eilperin**
Juliet Eilperin is a Pulitzer Prize-winning senior national affairs correspondent for The Washington Post, covering environmental and energy policy. She has written two books, "Demon Fish: Travels Through the Hidden World of Sharks" and "Fight Club Politics: How Partisanship is Poisoning the House of Representatives." Follow 🐦

Subscribe for one year for $29

**Get this offer now**