# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

```
-----------------------------X
                             :
KYLE PASCHAL-BARROS          :    Civ. No. 3:21CV00698(SALM)
                             :
v.                           :
                             :
ANGEL QUIROS; ROGER BOWLES;  :
CRAIG WASHINGTON; and        :
SCOTT MUELLER                :
                             :
-----------------------------X
                             :
KYLE PASCHAL-BARROS,         :    Civ. No. 3:21CV00700(SALM)
a/k/a DEJA L. PASCHAL        :    (consolidated case)
                             :
v.                           :
                             :
DEP'T OF MENTAL HEALTH AND   :
ADDICTION SERVICES;          :
COMMISSIONER OF MENTAL HEALTH :
AND ADDICTION SERVICES; and  :
CONNECTICUT DEPARTMENT OF    :
CORRECTION                   :    January 13, 2022
                             :
-----------------------------X
```

## INITIAL REVIEW ORDER

Self-represented plaintiff Kyle Paschal-Barros ("plaintiff"), an inmate in the custody of the Connecticut Department of Correction ("DOC"), brought two separate actions pursuant to 42 U.S.C. §1983, the Americans with Disabilities Act ("ADA"), §504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), and various provisions of Connecticut state law. Plaintiff proceeds in forma pauperis in both matters, pursuant to 28 U.S.C. §1915(a)(1). The Court consolidated the

complaints on October 14, 2021, and the consolidated action was transferred to the undersigned on October 15, 2021.

In 3:21CV00698(SALM), <u>Paschal-Barros v. Quiros, et al.,</u> ("21CV698"), plaintiff asserts claims against Angel Quiros, Commissioner of Corrections ("Commissioner Quiros"); Roger Bowles, (former) Warden of Northern Correctional Institute ("Warden Bowles"); Craig Washington, (former) Deputy Warden of Northern ("Deputy Warden Washington"); and Psychologist Scott Mueller, the (former) supervising psychologist at Northern ("Psychologist Mueller"). <u>See</u> 21CV698, Doc. #1 at 2-5.

In 3:21CV00700(SALM), <u>Paschal-Barros v. Dep't of Mental Health & Addiction Services, et al.,</u> ("21CV700"), plaintiff asserts claims against the Connecticut Department of Mental Health and Addiction Services ("DMHAS"); the Commissioner of Mental Health and Addiction Services ("DMHAS Commissioner"); and the DOC. <u>See</u> 21CV700, Doc. #1 at 2.

## I.   <u>LEGAL STANDARD</u>

Pursuant to 28 U.S.C. §1915A, this Court is required to review any civil complaint filed by a prisoner and must dismiss any portion of the complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b). Although detailed allegations are not required, a complaint must include sufficient facts to afford

the defendant fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

It is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)). However, even self-represented parties must comply with Rule 8 and the other rules of pleading applicable in all federal cases. See Harnage v. Lightner, 916 F.3d 138, 141 (2d Cir. 2019).

## II. ALLEGATIONS OF THE COMPLAINTS

The Court accepts the following allegations as true, solely for purposes of this initial review.

### A. Incarceration and Solitary Confinement

Plaintiff has been in the custody of the DOC since July 10, 2012. See 21CV698, Doc. #1 at 4. From June 2016 to April 12, 2021, plaintiff was "continually housed in near-total isolation and solitary confinement due to alleged conduct that is a product of his multiple co-occurring disabilities." Id. at 5.

"In January 2020, September 2020 defendants Bowles and Mueller recognized, acknowledged and admitted that the plaintiff has more than once emotionally and mentally decompensate and suffers the psychiatric harms of solitary confinement. This was again repeated in October 2020 with defendant Washington." Id. at 6 (sic).

### B.   Probate Petition and Psychiatric Evaluations

On March 25, 2021, Commissioner Quiros and Deputy Warden Washington "pursue[d] a petition in probate court." Id. On March 26, 2021, plaintiff was "served with a copy" of this petition "for involuntary commitment of persons with psychiatric disabilities" because "CTDOC could no longer provide for the plaintiff's disability needs." 21CV700, Doc. #1 at 3. The probate court appointed counsel for plaintiff, and appointed two medical experts to evaluate plaintiff, Dr. John Montminy and Dr. Christine L. Shapter. See id. Both Dr. Montminy and Dr. Shapter "explicitly stated the plaintiff needs in-patient hospital treatment and no lesser restricted placement is appropriate." 21CV698, Doc. #1 at 8. Dr. Shapter specifically "found the plaintiff gravely disabled due to many years in solitary confinement[.]" Id. at 6.

Dr. Montminy evaluated plaintiff on March 27, 2021, and diagnosed him with bipolar disorder with "schizoaffective features[]" and post-traumatic stress disorder. 21CV698, Doc.

#1-1 at 9. Dr. Montminy opined that plaintiff "will attempt to end his life at first possible opportunity[]" and that he could not recommend any placement <u>less</u> restrictive than an inpatient hospital setting. <u>Id.</u> at 10.

Dr. Shapter examined plaintiff on April 2, 2021. <u>See</u> <u>id.</u> at 6. She diagnosed plaintiff with "[p]ost traumatic stress disorder, with dissociative episodes, characterized by nightmares, flashbacks, and re-experiencing[]" and stated that "he has maladaptive coping strategies that lead to serious violence to others." <u>Id.</u> at 6. Dr. Shapter recommended "[i]npatient hospitalization[,]" and noted that "the primary team" specifically recommended placement at Whiting Forensic Hospital ("Whiting"). <u>Id.</u> at 7.

### C.  Voluntary Admission to Whiting

On April 12, 2021, plaintiff "was permitted voluntary admission to the state's maximum security psychiatric hospital Whiting Forensic Hospital[.]" 21CV698, Doc. #1 at 6-7. Plaintiff was admitted for "individual and group therapy[,]" <u>id.</u>, but was "informed that he was transferred under the defendant's and CTDOC contract for evaluation only." 21CV700, Doc. #1 at 5. Despite there being "individual and group therapies offered on units 4 and 6 that the plaintiff learned would apply to his disabilities[,]" plaintiff was denied "the opportunity to participate in and benefit from the mental health educational

service, program, and treatments[.]" Id. Rather, "plaintiff was
only allowed medication and to attend the competency restoration
groups and physical fitness and computer groups, and
evaluation." Id. "[O]ther civilly committed patients with
similar disabilities ... are permitted to participate and
benefit from mental health educational services programs and
treatment[.]" Id. at 6.

On May 17, 2021, after "concluding the evaluation [Whiting]
staff immediately sent the plaintiff back to CTDOC Garner CI and
informed him that unless Quiros requests treatment they are" not
available to provide treatment. 21CV698, Doc. #1 at 7. Once
plaintiff arrived at Garner Correctional Institution ("Garner"),
he "was sent to the inpatient medical unit[,]" then returned "to
solitary confinement." Id. at 7-8.

## III. __DISCUSSION__

The Court construes plaintiff's complaints as asserting
claims pursuant to §1983 for unconstitutional conditions of
confinement and deliberate indifference to serious medical needs
in violation of the Fourteenth and Eighth Amendments; under the
ADA and the Rehabilitation Act, for disability discrimination
and failure to provide adequate accommodations claim; and under
Connecticut law, an Equal Protection claim under the Connecticut
State Constitution and statutory claims under Conn. Gen. Stat.

§§17a-540 through 17a-550, and §§46a-69 and 46a-77(c).[1]

### A.   Plaintiff's Custodial Status

Before reviewing plaintiff's claims, the Court pauses to determine whether plaintiff should be treated as a sentenced inmate, or as a pretrial detainee.

The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that plaintiff was sentenced on August 8, 2013, to a term of imprisonment that has not yet expired, and that plaintiff is currently confined at the Walker Building of the MacDougall-Walker Correctional Institution ("Walker"). See Inmate

---

[1] In the 21CV700 Complaint, plaintiff states in a conclusory fashion: "The defendants ... violated the plaintiff's Fourteenth Amendment rights to equal protection of the law." 21CV700, Doc. #1 at 7. The mere mention of a constitutional provision is not sufficient to state a claim for relief under that provision. See, e.g., Monger v. Conn. Dep't of Transp., No. 3:17CV00205(JCH), 2017 WL 3996393, at *5 (D. Conn. Sept. 11, 2017) ("Merely mentioning the state constitution, however, is not sufficient to state a claim upon which relief can be based."). Plaintiff makes no allegations relating to an Equal Protection violation. Therefore, the Court does not construe the complaints as alleging such a claim.

Information, Conn. State Dept. of Correction,
http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=3
90410 (last visited Jan. 9, 2022).

Plaintiff is, therefore, a sentenced inmate.

However, the Court additionally takes judicial notice of
the State of Connecticut Judicial Branch website, which reflects
that plaintiff is also a defendant in three pending criminal
matters: D03D-CR21-0192853-S; DBD-CR19-0189696-T; and TTD-CR20-
0183120-T. The charges in these matters appear to arise out of
events that occurred while plaintiff was incarcerated. All three
pending cases charge violations of Conn. Gen. Stat. §53a-167c,
Assault of Public Safety Personnel, and have offense dates that
fall during plaintiff's period of incarceration.

Thus, plaintiff is also a pretrial detainee.

The Court has been unable to locate any controlling or
informative precedent on the question of which status should
control when a plaintiff is both a sentenced inmate and a
pretrial detainee. The Court finds that plaintiff's claims
should be evaluated under the standards applicable to claims
brought by sentenced inmates.

Plaintiff's claims are related to the conditions of his
confinement. The primary basis for plaintiff's confinement is
his sentence. His secondary pretrial detention is a result of
his having been charged with additional offenses alleged to have

been committed during his incarceration. The conditions plaintiff challenges do not arise uniquely from his detention on those additional offenses; to the contrary, they would have arisen whether or not plaintiff had additional charges pending. In sum, where, as here, the events and conditions at issue are not directly related solely to plaintiff's pretrial status, plaintiff's status as a sentenced inmate controls. The Court further observes that a contrary finding could create perverse incentives. If the Court were to apply the Fourteenth Amendment standard for conditions of confinement claims to sentenced inmates solely because they had committed additional offenses while incarcerated, that would in essence reward the commission of such offenses. This, the Court cannot abide.

The Court therefore applies the Eighth Amendment standards to all of plaintiff's constitutional claims.

**B.   Section 1983 Claims**

Plaintiff brings claims relating to the conditions of his confinement and deliberate indifference to his serious medical needs against defendants Commissioner Quiros, Warden Bowles, Deputy Warden Washington, and Psychologist Mueller. See generally 21CV698, Doc. #1. He brings claims relating to deliberate indifference to his serious medical needs against defendants DMHAS, the DMHAS Commissioner, and the DOC. See generally 21CV700, Doc. #1. As noted above, the Court construes

these claims as being brought pursuant to the Eighth Amendment, because plaintiff was a sentenced inmate at all times relevant to the complaints.

### 1. Fourteenth Amendment Claims

Because the Court has concluded that plaintiff's claims are cognizable under the Eighth Amendment, all claims brought pursuant to the Fourteenth Amendment are **DISMISSED.**

### 2. Defendants DOC and DMHAS

"Section 1983 requires that each defendant be a <u>person</u> acting under color of state law. State agencies, however, are not persons within the meaning of section 1983." <u>Mayo v. Doe</u>, 480 F. Supp. 3d 395, 401 (D. Conn. 2020) (emphasis added) (citations omitted). The DOC and DHMAS are state agencies, and, therefore, they are not "persons" subject to suit under 42 U.S.C. §1983. <u>See</u> <u>P.C. v. Conn. Dep't of Child. & Fams.</u>, 662 F. Supp. 2d 218, 226 (D. Conn. 2009) (citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989)) ("A state agency is not a 'person' within the meaning of section 1983."). Accordingly, any claims brought against DOC and DMHAS under §1983 are **DISMISSED, with prejudice.**

### 3. Official Capacity Claims for Damages

Plaintiff sues the DMHAS Commissioner in her or his official capacity. <u>See</u> 21CV700, Doc. #1 at 2. He sues defendants Quiros, Bowles, Washington, and Mueller in both their individual

and official capacities. <u>See</u> 21CV698, Doc. #1 at 2-3.

"To the extent [plaintiff] seeks monetary damages from the defendants in their official capacities, such claims are barred by the Eleventh Amendment." <u>Azor v. Semple</u>, No. 3:19CV01068(SRU), 2019 WL 4167072, at *2 (D. Conn. Sept. 3, 2019). Accordingly, any "claims for money damages against the defendants in their official capacities are DISMISSED with prejudice pursuant to 28 U.S.C. §1915A(b)(2)." <u>Martin v. Pelletier</u>, No. 3:18CV02134(KAD), 2019 WL 2103805, at *2 (D. Conn. May 14, 2019) (emphasis removed). All such claims are **DISMISSED, with prejudice.**

### 4. Official Capacity Claims for Injunctive Relief

"[U]nder the venerable doctrine of <u>Ex parte Young</u>, 209 U.S. 123 (1908), a plaintiff may sue a state official acting in his official capacity -- notwithstanding the Eleventh Amendment -- for 'prospective injunctive relief' from violations of federal law." <u>In re Deposit Ins. Agency</u>, 482 F.3d 612, 617 (2d Cir. 2007); <u>see</u> <u>also</u> <u>Vega v. Semple</u>, 963 F.3d 259, 281 (2d Cir. 2020) ("[S]uits for prospective relief against an individual acting in his official capacity may be brought to end an ongoing violation of a federal law."). A claim for injunctive relief against a defendant in his or her official capacity may proceed only to the extent that the defendant has the authority to remedy the alleged ongoing constitutional violation. <u>See Scozzari v.</u>

Santiago, No. 3:19CV00229(JAM), 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019) (permitting plaintiff's claims for injunctive relief to proceed against certain defendants "insofar as they have the power to remedy what he alleges to be his unconstitutional placement in administrative segregation[]").

For purposes of initial review, as discussed below, the Court finds that plaintiff has sufficiently alleged an ongoing Eighth Amendment violation as to both his conditions of confinement claims regarding solitary confinement and his deliberate indifference to serious medical needs claims. However, Northern Correctional Institution closed permanently on June 11, 2021.[2] Accordingly, defendants Bowles, Washington, and Mueller, who are alleged to have been employed at Northern, are no longer in positions to remedy the violations alleged by plaintiff.[3]

Accordingly, the claims for injunctive relief against defendants Bowles, Washington, and Mueller, in their official capacities, are **DISMISSED**. The claims for injunctive relief against Commissioner Quiros in his official capacity may proceed.

---

[2] See Northern Correctional Institution, Conn. State Dept. of Correction, https://portal.ct.gov/DOC/Facility/Northern-CI (last visited Jan. 13, 2022).

[3] There is no indication in the record that any of these defendants are currently employed at Walker.

5.   Conditions of Confinement

Plaintiff asserts that the defendants "depriv[ed] him of his right to be [free] from cruel and unusual punishment" and alleges that his prolonged isolation subjected him to "unnecessarily and wantonly inflicted pain[.]" 21CV698, Doc. #1 at 9-10.

An unconstitutional conditions of confinement claim under the Eighth Amendment has an objective and a subjective element.

> To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a sufficiently serious deprivation, such as the denial of a life necessity or a substantial risk of serious harm.
> To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. Thus, an allegation of mere negligent conduct is insufficient. Rather, the subjective element requires that a plaintiff allege that prison officials acted with a mental state equivalent to subjective recklessness, as the term is used in criminal law.

Abernathy v. Comm'r of Correction, No. 3:20CV00628(VAB), 2021 WL 1240018, at *4 (D. Conn. Apr. 2, 2021) (citations and quotation marks omitted).

As to the objective element, extended periods of "isolation or solitary confinement ... can sometimes constitute cruel and unusual punishment under the Eighth Amendment." Conley v. Aldi, No. 3:18CV00824(VAB), 2020 WL 1333501, at *6 (D. Conn. Mar. 23, 2020) (collecting cases); see also Reynolds v. Quiros, 990 F.3d

286, 294 (2d Cir. 2021) ("[I]f the imposed conditions did constitute solitary confinement, [plaintiff] could arguably prevail on his claims alleging violations of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment."). Some courts have found this to be particularly true where the plaintiff suffers from preexisting mental health issues. See Walker v. Quiros, No. 3:11CV00082(MPS), 2014 WL 7404550, at *5 (D. Conn. Sept. 30, 2014) ("[C]laims that his mental illness was exacerbated ... could conceivably rise to the level of posing an unreasonable risk of serious damage to his health or a deprivation of basic human needs. They do not fail as a matter of law."); Jusino v. Quiros, No. 3:21CV00620(SRU), 2021 WL 5111908, at *7 (D. Conn. Nov. 3, 2021) (finding that solitary confinement posed a "heightened risk of harm" in light of plaintiff's mental health conditions).

Plaintiff alleges that he has been housed in near total isolation for approximately five years, which has resulted in deteriorating mental health. For initial pleading purposes, plaintiff has sufficiently pled the objective element of the Eighth Amendment analysis.

As to the subjective element, construed broadly, plaintiff's allegations sufficiently allege that Commissioner Quiros, Warden Bowles, Deputy Warden Washington, and Psychologist Mueller were actually aware of the substantial risk

of serious harm that could result from plaintiff's placement in
solitary confinement, and that they acted with deliberate
indifference to that risk of harm to plaintiff's mental health
by subjecting him to prolonged solitary confinement. See
21CV698, Doc. #1 at 6.

Accordingly, the conditions of confinement as to prolonged
solitary confinement may proceed against defendants Commissioner
Quiros, Warden Bowles, Deputy Warden Washington, and
Psychologist Mueller in their individual capacities for damages.

As previously noted, defendants Warden Bowles, Deputy
Warden Washington, and Psychologist Mueller were alleged to be
employed at Northern, which has closed. Accordingly, any claims
against defendants Warden Bowles, Deputy Warden Washington, and
Psychologist Mueller, in their official capacities for
injunctive relief, are **DISMISSED**. The claims against
Commissioner Quiros in his official capacity for injunctive
relief may proceed at this time.

6.   Deliberate Indifference to Serious Medical Needs

Plaintiff also asserts that defendants were deliberately
indifferent to his serious medical needs, specifically, that
defendants have failed to provide him with inpatient treatment.
See 21CV698, Doc. #1 at 8-10; 21CV700, Doc. #1 at 6-8.

The Supreme Court has held that

deliberate indifference to serious medical needs of

> prisoners constitutes the unnecessary and wanton
> infliction of pain proscribed by the Eighth Amendment.
> This is true whether the indifference is manifested by
> prison doctors in their response to the prisoner's needs
> or by prison guards in intentionally denying or delaying
> access to medical care or intentionally interfering with
> the treatment once prescribed. Regardless of how
> evidenced, deliberate indifference to a prisoner's
> serious illness or injury states a cause of action under
> §1983.

Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (citations,

quotation marks, and footnotes omitted). "[N]ot every lapse in

medical care is a constitutional wrong. Rather, a prison

official violates the Eighth Amendment only when two

requirements are met." Salahuddin v. Goord, 467 F.3d 263, 279

(2d Cir. 2006) (citation and quotation marks omitted). The first

requirement is objective, while the second is subjective. Under

the objective prong, "the alleged deprivation of adequate

medical care must be sufficiently serious." Id. (citation and

quotation marks omitted). The subjective prong requires a

showing that the defendant had a "sufficiently culpable state of

mind[.]" Morgan v. Dzurenda, 956 F.3d 84, 89 (2d Cir. 2020)

(citation and quotation marks omitted).

As to the objective element, plaintiff has sufficiently

alleged, with factual support for his allegations, that he is

gravely disabled as a result of his mental health condition, and

that medical experts have determined that "inpatient hospital

treatment" is both "necessary" and "recommended" for his

conditions. 21CV698, Doc. #1-1 at 7, 10.

As to the subjective element, plaintiff has specifically alleged that defendants Commissioner Quiros, Warden Bowles, Deputy Warden Washington, and Psychologist Mueller were actually aware of his mental health treatment needs and the substantial risk that he will suffer serious harm if he does not receive the treatment recommended by the medical experts.

Accordingly, the Eighth Amendment deliberate indifference to serious medical needs claim may proceed against defendants Commissioner Quiros, Warden Bowles, Deputy Warden Washington, and Psychologist Mueller in their individual capacities for damages.

As previously noted, defendants Warden Bowles, Deputy Warden Washington, and Psychologist Mueller were alleged to be employed at Northern, which has closed. Accordingly, any claims against defendants Warden Bowles, Deputy Warden Washington, and Psychologist Mueller, in their official capacities for injunctive relief, are **DISMISSED**. The claims against Commissioner Quiros in his official capacity for injunctive relief may proceed at this time.

## C.    ADA and Rehabilitation Act[4]

Plaintiff brings claims under Title II of the ADA and §504 of the Rehabilitation Act against all defendants in their official capacities.[5] Plaintiff alleges disability discrimination

---

[4] The standards under Title II of the ADA and §504 of the Rehabilitation Act "are generally the same[.]" Wright v. New York State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016). The only difference between the ADA and Rehabilitation Act is that the Rehabilitation Act applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. See Messier v. Southbury Training Sch., 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008); see also Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together). The "distinctions between the statutes are not implicated in this case," so "'we treat claims under the two statutes identically.'" Wright, 831 F.3d at 72 (quoting Henrietta D., 331 F.3d at 272).

[5] The extent to which a plaintiff may bring official capacity suits under the ADA and Rehabilitation Act is an area of unsettled law in the Second Circuit. See Cosby v. Rusi, No. 3:20CV00459(MPS), 2020 WL 3577482, at *5 (D. Conn. July 1, 2020); Monroe v. Gerbing, No. 16CV02818(KMK), 2017 WL 6614625, at *15 (S.D.N.Y. Dec. 27, 2017) (collecting cases). Some courts have concluded that prison officials can be sued for damages in their official capacities because the real party in interest in an official-capacity suit is the governmental entity, which is subject to liability under the ADA and Rehabilitation Act. See Cosby, 2020 WL 3577482, at *5 (collecting cases). However, to overcome a state's sovereign immunity from a suit for monetary damages under the Eleventh Amendment, a plaintiff must additionally "allege that his mistreatment was motivated by either discriminatory animus or ill will due to disability." Id.; see also Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 112 (2d Cir. 2001); Monroe, 2017 WL 6614625, at *15. At this initial stage in the proceeding, the Court will consider whether Plaintiff has stated plausible claims against DOC, the DMHAS, and the individual defendants in their official capacities. This ruling is without prejudice to a motion to dismiss.

based on exclusion "from participation in programs, activities and services[;]" "relegation to lesser services, programs, activities, benefits, and other opportunities[;]" and defendants' "failure to make modifications to existing policies, practices, and customs[.]" 21CV700, Doc. #1 at 7; see also 21CV698, Doc. #1 at 14.

"Both the ADA and the [Rehabilitation Act] undoubtedly apply to state prisons and their prisoners." Wright, 831 F.3d at 72. However, neither the ADA nor the Rehabilitation Act "applies to claims regarding the adequacy or substance of services provided by correctional departments or provides a remedy for medical malpractice." Reese v. Breton, No. 3:18CV01465(VAB), 2020 WL 998732, at *5 (D. Conn. Mar. 2, 2020). Accordingly, "[c]ourts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." Elbert v. New York State Dep't of Corr. Servs., 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010).

To establish a prima facie violation under Title II of the ADA or the Rehabilitation Act, a plaintiff must show: "that 1) he is a qualified individual with a disability; 2) [defendants are] entit[ies] subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [defendants'] services, programs, or activities or [defendants] otherwise

discriminated against him by reason of his disability." <u>Wright</u>,

831 F.3d at 72.

As to the first element, a "qualified individual with a

disability" is

> an individual with a disability who, with or without
> reasonable modifications to rules, policies, or
> practices, the removal of architectural, communication,
> or transportation barriers, or the provision of
> auxiliary aids and services, meets the essential
> eligibility requirements for the receipt of services or
> the participation in programs or activities provided by
> a public entity.

42 U.S.C. §12131(2). "To demonstrate that he is a 'qualified

individual with a disability,' the plaintiff must establish that

he has a physical or mental impairment and provide evidence that

such impairment 'substantially limits one or more of that

person's major life activities.'" <u>Andino v. Fischer</u>, 698 F.

Supp. 2d 362, 378 (S.D.N.Y. 2010) (quoting <u>Heilweil v. Mount</u>

<u>Sinai Hospital</u>, 32 F.3d 718, 722 (2d Cir. 1994)). "Major life

activities include[,]" <u>inter</u> <u>alia</u>, "caring for oneself[.]" 42

U.S.C. §12102(2)(A). Here, plaintiff has made allegations

sufficient to demonstrate at the initial review stage that he is

a qualified individual with disabilities. Plaintiff has been

diagnosed with post traumatic stress disorder, and the

evaluating physician found that he is "gravely disabled[]" in

part because "[h]e is unable to care for his basic needs."

21CV698, Doc. #1-1 at 7.

As to the second element, "[t]he Supreme Court has held that the ADA and Rehabilitation Act extend to state prisons." Andino, 698 F. Supp. 2d at 379 (citing Atkins v. Cnty. of Orange, 251 F. Supp. 2d 1225, 1231 (S.D.N.Y. 2003); Penn. Dep't of Corrections v. Yeskey, 524 U.S. 206, 209 (1998)). This extends to the employees of the DOC. See id. The defendants are all State agencies or employees of State agencies. Accordingly, the defendants are "public entities" subject to the acts.

As to the third element, there are "three available theories[]" of discrimination that can be used to establish the third prong of an ADA and Rehabilitation Act claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009). Plaintiff does not articulate the theory on which he brings his disability discrimination claims.

### 1. Disparate Treatment

Disparate treatment requires a showing that plaintiff was treated "less favorably than others because of their race, color, religion, sex, or other protected characteristic." Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003) (citation and quotation marks omitted) (emphasis added). Here, plaintiff has not alleged that he was housed in solitary confinement because of his disability, nor does he allege that only those with his

disabilities were subjected to solitary confinement. See Atkins, 251 F. Supp. 2d at 1232 (declining to find disparate treatment where "[p]laintiffs d[id] not allege that the mentally disabled [we]re the only prisoners subjected to this procedure while the non-mentally disabled prisoners [we]re excluded"). Rather, plaintiff alleges that housing him in solitary confinement had a uniquely detrimental impact on him. Accordingly, his claims cannot be brought under a disparate treatment theory.

### 2. Disparate Impact

"To establish a prima facie case under a disparate impact theory, a plaintiff must demonstrate '(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.'" Doherty v. Bice, No. 18CV10898(NSR), 2020 WL 5548790, at *7 (S.D.N.Y. Sept. 16, 2020) (quoting B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016)). "[P]laintiffs pleading disparate impact claims must include at least one allegation that raises an inference of such disparity -- one sufficient to put the defendants on notice regarding the basis for plaintiffs' belief in a disparate effect." Id. (citation and quotation marks omitted.) Here, plaintiff's allegations relate to the DOC's use of solitary confinement, a facially neutral practice, thus satisfying the first element. As

to the second element, plaintiff alleges that his "prolonged
isolation" subjected him "to dangerous and degrading
mistreatment, caused him serious pain and injury, [and] placed
him at substantial risk of physical and psychological injury[.]"
21CV698, Doc. #1 at 9. He alleges that his placement in solitary
confinement is particularly detrimental to him because of his
mental illness. See 21CV700, Doc. #1 at 22 ("[H]is mental status
may be deteriorating further as a result of this
confinement[.]"). Plaintiff's allegations are sufficient to
proceed as to a disparate impact claim at the initial review
stage.

       3.   <u>Reasonable Accommodation</u>

Finally, plaintiff alleges failure to provide reasonable
accommodations, contending that these defendants denied him
access to "the mental health educational service, program, and
treatments[,]" such as "individual and group therapies" at
Whiting. 21CV700, Doc. #1 at 5. In evaluating an accommodation
claim, the Court asks "whether a plaintiff with disabilities as
a practical matter was denied meaningful access to services,
programs or activities to which he or she was legally entitled."
<u>Wright</u>, 831 F.3d at 72 (citation and quotation marks omitted).
"A plaintiff need not demonstrate that [he] is entirely
precluded from accessing a benefit; rather, difficulty in
accessing a benefit is sufficient to sustain a reasonable

accommodation claim." Scalercio-Isenberg v. Port Auth. of N.Y. & N.J., 487 F. Supp. 3d 190, 201 (S.D.N.Y. 2020). Here, plaintiff contends that his transfer to Whiting for evaluation only, under the contract between DOC and DMHAS, prevented him from having access to meaningful mental health treatment in a hospital setting that was deemed necessary by a medical professional.

Accordingly, at this initial stage in the proceeding, plaintiff's claims under the ADA and Rehabilitation Act may proceed against all defendants for further development.

**D. Connecticut State Law Claims**

Plaintiff brings claims under Connecticut state Law, alleging violation of his rights under Conn. Gen. Stat. Chapter 319i, and under Conn. Gen. Stat. §46a-69 and §46a-77(c). Plaintiff also alleges that defendants "violate[d] the plaintiff's state constitutional rights to Equal Protection and Amendment XXI[.]" 21CV700, Doc. #1 at 8.

**1. Equal Protection**

Plaintiff makes a brief allusion to an Equal Protection Claim pursuant to the Connecticut State Constitution. See Conn. Const. art. I, §20. "Merely mentioning the state constitution, however, is not sufficient to state a claim upon which relief can be based." Monger, 2017 WL 3996393, at *5.

Even if plaintiff had sufficiently alleged an Equal Protection Claim under the Connecticut State Constitution,

"neither this court nor the Connecticut Supreme court has ever recognized a private cause of action under Article First, §20 of the Connecticut Constitution." Pierce v. Semple, No. 3:18CV01858(KAD), 2018 WL 6173719, at *6 (D. Conn. Nov. 26, 2018); see also Woolard v. Santiago, No. 3:19CV01256(VLB), 2020 WL 2079533, at *11 (D. Conn. Apr. 30, 2020) (collecting cases). Accordingly, to the extent plaintiff brings an Equal Protection Claim under the Connecticut State Constitution, it is **DISMISSED, with prejudice.**

> ### 2.   Conn. Gen. Stat. Chapter 319i – Patients' Bill of Rights

Plaintiff alleges violations of his "state statutory rights pursuant to C.G.S. Chapter 319i Patient Rights[,]" 21CV700, Doc. #1 at 8, against defendants DMHAS, Commissioner of DMHAS, and DOC. Id. at 2. Chapter 319i concerns "Persons with Psychiatric Disabilities." Part III of that Chapter, Conn. Gen. Stat. §§17a-540 through 17a-550, governs "Patients' Rights," and is also known as the "patients' bill of rights." Phoebe G. v. Solnit, 743 A.2d 606, 608 (Conn. 1999).

Connecticut law recognizes a private right of action under the patients' bill of rights. See Mahoney v. Lensink, 569 A.2d 518, 524 (Conn. 1990) ("[W]e conclude that it is a necessary implication of the purposes sought to be served by the enactment of the patients' bill of rights that the legislature intended to

provide a direct cause of action against the state[.]")
(citations and footnote omitted). However, the patients' bill of
rights does not "apply to correctional institutions operated by
the state department of correction." Wiseman v. Armstrong, 850
A.2d 114, 115 (Conn. 2004). Accordingly, any patients' bill of
rights claims against DOC are **DISMISSED, with prejudice.**

Plaintiff's claims against DMHAS and the Commissioner of
DMHAS, however, may proceed to service of process. To state a
claim under the patients' bill of rights, a plaintiff must
allege "that the conditions of his hospitalization were
statutorily deficient. The plaintiff must allege and prove that
the hospital failed initially to provide, or thereafter
appropriately to monitor, an individualized treatment suitable
to his psychiatric circumstances." Mahoney, 569 A.2d at 527. The
hospital is afforded "a broad range of discretion[]" and the
Court's inquiry "is whether the hospital made good faith efforts
to improve the patient's mental health and not whether it
succeeded in fulfillment of this goal." Id. at 528.

Plaintiff has alleged that Whiting[6] "continued to deny him
the opportunity to participate in and benefit from the mental
health educational service, programs, and treatments" and "only

---

[6] Whiting is operated by DMHAS. "The Whiting Forensic Hospital
shall be within the general administrative control and
supervision of the Department of Mental Health and Addiction
Services." Conn. Gen. Stat. §17a-562.

allowed [him] medication and to attend the competency restoration groups and physical fitness and computer groups, and evaluation[.]" 21CV700, Doc. #1 at 5. At this initial review stage, these allegations are sufficient to proceed against DMHAS and the Commissioner. See Mahoney, 569 A.2d 518 at 528 (The patients' bill of rights was "sufficiently invoke[d]" when plaintiff alleged "that the defendants wrongfully 'failed to provide proper counseling, medication, supervision or suicide precautions, so as to prevent the decedent from acting on his suicidal tendencies.'"). Accordingly, plaintiff's claims against DMHAS and the DMHAS Commissioner for violations of the patients' bill of rights may proceed for further development.

3.   Conn. Gen. Stat. §46a-69, §46a-77(c)

Plaintiff alleges violations of Conn. Gen. Stat. §46a-69 and §46a-77(c) against DMHAS, the Commissioner of DMHAS, and the DOC. See 21CV700, Doc. #1 at 2, 8. Section 46a-69 makes it a "discriminatory practice to violate any of the provisions of sections 46a-70 to 46a-78, inclusive." Conn. Gen. Stat. §46a-69. Section 46a-77(c) requires that each state agency comply "in all of its services, programs and activities with the provisions of the [ADA] to the same extent that it provides rights and protections for persons with physical or mental disabilities beyond those provided for by the laws of this state." Conn. Gen. Stat. §46a-77(c). The statutory scheme expressly creates a

private cause of action for this provision. "Any person claiming to be aggrieved by a violation of any provision of sections 46a-70 to 46a-78, inclusive ... may petition the Superior Court for appropriate relief and said court shall have the power to grant such relief, by injunction or otherwise, as it deems just and suitable." Conn. Gen. Stat. §46a-99.

Because §46a-77(c) requires compliance with the ADA, the same analysis applies to this state law claim as applied to plaintiff's ADA claim. Cf. Hurdle v. Comm'r of Correction, No. CV-20-5000647-S, 2020 WL 5540600, at *4-5 (Conn. Super. Ct. Aug. 17, 2020); Siminausky v. Comm'r of Correction, No. CV-20-5000471-S, 2021 WL 1530254, at *4 (Conn. Super. Ct. Mar. 10, 2021). As discussed, plaintiff's ADA claims are permitted to proceed against all defendants. Accordingly, plaintiff's claim pursuant to §46a-77(c) may also proceed against all defendants.

## IV.   CONCLUSION

The Court finds that the following claims may proceed to service of process:

(a) Eighth Amendment conditions of confinement against Commissioner Quiros, Warden Bowles, Deputy Warden Washington, and Psychologist Mueller for damages in their individual capacities.

(b) Eighth Amendment conditions of confinement against Commissioner Quiros for injunctive relief in his official

capacity.

(c) Eighth Amendment deliberate indifference to serious medical needs against Commissioner Quiros, Warden Bowles, Deputy Warden Washington, and Psychologist Mueller for damages in their individual capacities.

(d) Eighth Amendment deliberate indifference to serious medical needs against Commissioner Quiros for injunctive relief in his official capacity.

(e) Title II of the ADA and Rehabilitation Act claims against DOC, DMHAS, the DMHAS Commissioner, Commissioner Quiros, Warden Bowles, Deputy Warden Washington, and Psychologist Mueller in their official capacities.

(f) State law claims pursuant to the patients' bill of rights against DMHAS and the DMHAS Commissioner in their official capacities.

(g) State law claims pursuant to Conn. Gen. Stat. §46a-77 against DOC, DMHAS, and the DMHAS Commissioner in their official capacities.

All other claims are **DISMISSED, with prejudice.**

**This Initial Review Order does not preclude the filing of a Motion to Dismiss pursuant to Rule 12.** Defendants are encouraged to carefully evaluate the claims that have been permitted to proceed to service, and respond by Answer or Motion, as appropriate.

**The Clerk shall** send a courtesy copy of the two Complaints consolidated under this action and this Order to the DOC Office of Legal Affairs and to the Connecticut Attorney General.

A detailed case management and scheduling order will be entered after defendants are served or waive service of process.

If plaintiff changes his address at any time during the litigation of this case, he **MUST** notify the Court. Failure to do so may result in the dismissal of the case. **Plaintiff must provide notice of a change of address even if he remains incarcerated.** He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Paschal-Barros has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

**Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court.** Plaintiff is advised that the Program may be used only to file documents with the Court. The Local Rules provide that discovery materials are not filed with the Court; therefore, discovery requests and responses must be served on defendants' counsel by regular mail.

It is so ordered this 13th day of January, 2022, at New

Haven, Connecticut.

_____/s/_____

HON. SARAH A. L. MERRIAM

UNITED STATES DISTRICT JUDGE